# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| SHERRI R. DICKS, | ) |
|     Defendant-Below/Appellant, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) C.A. No.: CPU4-11-002660 |
| | ) |
| DELAWARE ACCEPTANCE | ) |
| CORPORATION, | ) |
|     Plaintiff-Below/Appellee. | ) |

Submitted: January 24, 2014
Decided: February 18, 2014


Elwood T. Eveland, Jr., Esquire          Patrick Scanlon, Esquire
715 N. King Street, Suite 200            203 NE Front Street, Suite 101
Wilmington, DE 19801                     Milford, DE 19963
*Attorney for Appellant*                 *Attorney for Appellee*


## MEMORANDUM OPINION AND ORDER
## ON APPELLEE'S MOTION FOR SUMMARY JUDGMENT


### PROCEDURAL HISTORY

This is an appeal from the Justice of the Peace Court. On April 9, 2010, Delaware Acceptance Corporation (hereinafter "DAC") filed a Complaint in the Justice of the Peace Court against Defendant, Sherri R. Dicks (hereinafter "Dicks"), alleging that Ms. Dicks entered into a credit card agreement with Chase Manhattan Bank (hereinafter "Chase Manhattan"), whereby Chase Manhattan issued Ms. Dicks a credit card with an account number ending in 5749. The account was allegedly assigned to Vion Holdings, LLC

(hereinafter "Vion Holdings"), then to Portfolio Investment Exchange, Inc. (hereinafter "Portfolio Investment"), and finally to DAC. DAC claims Ms. Dicks defaulted on the account, and DAC, as assignee of the account, seeks damages in the amount of $8,002.49. DAC also seeks court costs and post-judgment interest at the legal rate. On March 16, 2011, trial was held, and on April 13, 2011, the Honorable Robert C. Lopez issued a decision in favor of DAC in the amount of $8,002.49 plus pre-judgment interest of $1,571.17, court costs of $40.50, and post-judgment interest at a rate of 9.75%.

On April 27, 2011, following the Justice of the Peace decision, Ms. Dicks appealed to the Court of Common Pleas. Ms. Dicks denies the debt and default thereon. She also brings a Counterclaim against DAC for falsely representing the amount of the debt in violation of 15 U.S.C. §1692(e)(2). The Counterclaim was dismissed on December 9, 2011. This Court previously denied DAC's Motions for Summary Judgment on May 3, 2012, on the basis that a genuine issue of material fact existed as to the actual owner of the account.[1]

On September 10, 2013, DAC brings this Motion for Summary Judgment. DAC allege it did provide sufficient documentation to support a finding that DAC is the assignee of the account, and therefore, is entitled to judgment on the proceedings.[2]

On November 15, 2013, the Court held a hearing on DAC's Motion. The Court ordered both attorneys to submit supporting arguments regarding the assignment and validity of the debt.

---

[1] Judge Davis based his ruling on his previous decision in the case Delaware Acceptance Corp. v. Swain, 2012 WL 830563 (Com. Pl. Jan. 31, 2012) (relating to the admissibility of affidavits and spreadsheets describing the chain of custody of certain accounts).

[2] The sole issue remaining in this matter is the ownership of the account after it was charged off. Ms. Dicks is no longer denying that this is her account, nor is she pursuing a challenge to the balance owed.

## PARTIES' CONTENTIONS

DAC contends that it is entitled to Summary Judgment because there exists no genuine issue of material fact regarding Ms. Dicks' account. Ms. Dicks has previously admitted to the existence of the account, admitted that she made charges on the account, and that a balance still remains due on the account.

Ms. Dicks contends that Summary Judgment should be denied because DAC has failed to show that it is the actual owner of the account. Ms. Dicks asserts that the documents upon which DAC bases its arguments to establish ownership do not contain specific detail sufficient to identify which accounts were bought and sold to the various purchasers in this matter, and therefore DAC cannot conclusively establish its ownership.

DAC counters Ms. Dicks' ownership argument by alleging that it has provided a chain of title, affidavits, and documents supporting its position that it is the proper owner of the account. DAC contends that the affidavits are not hearsay, as the affiants have personal knowledge of the matters to which they attest.

## DISCUSSION

Under CCP Rule 56(c), "[t]he judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] If the Court determines that material issues of fact

---

[3] CCP Civ. R. 56(c).

do exist, then summary judgment must be denied. DAC has the burden to show the chain of title in order to prove that it is the proper party to bring the action.[4]

DAC argues that it has proven its ownership of Ms. Dicks' account by a preponderance of the evidence, relying upon the affidavits of both Bruce Gilmore (hereinafter "Gilmore")[5] and Daniel Scanlon (hereinafter "Scanlon")[6] in addition to documents from Global Debt Registry, LLC's (hereinafter "GDR") databases.

Gilmore's first affidavit, dated January 26, 2011, outlines the transfer of accounts originating from Chase Bank USA, N.A. (hereinafter "Chase Bank") to DAC using GDR's databases. Gilmore affirmed the following:

1) On June 29 2009, CHASE BANK USA, N.A. registered with GDR a portfolio of account receivables with Portfolio Certification Number 1000001;
2) On June 29 2009, CHASE BANK USA, N.A. sold to VION HOLDINGS LLC a portfolio of account receivables with Portfolio Certification Number 1000002...
4) On August 03 2009, VION HOLDINGS LLC sold to PORTFOLIO INVESTMENT EXCHANGE, INC. a portfolio of account receivables with Portfolio Certification Number 1000032…
6) On August 31 2009, PORTFOLIO INVESTMENT EXCHANGE, INC. sold to DELAWARE ACCEPTANCE CORPORATION a portfolio of account receivables with Portfolio Certification Number 1000035.
7) Portfolio Certification Number 1000035 is made up of selected accounts from Portfolio Certification Number(s) 1000001, 1000002, 1000003, 1000032, 1000033. These transfers were recorded by GDR.[7]

---

4 Dahlink Financial Corp. v. Bochniak, 2012 WL 1415815 at *6 (Del. Com. Pl. Mar. 13, 2012).
5 Gilmore is the President and Chief Information Officer of Global Debt Registry, LLC. He affirms in his affidavits that he has personal knowledge of GDR's practices involving the registration, sale, and transfer of accounts. He does not specify whether he is the custodian of the books and records.
6 Scanlon is an authorized representative of DAC who has personal knowledge of the books and records of DAC, which are kept in the ordinary course of business and the entries in which are made at or near the time of occurrence.
7 Pl. Mot. Summ. J., Ex. E, at 8.

Gilmore's affidavit identifies that Chase Bank registered a portfolio of account receivables with GDR. However, Plaintiff has not provided an affidavit from a Chase Bank representative who possesses personal knowledge of the books and records, that Chase Bank did, in fact, transfer particular documents and account information related to Ms. Dicks' account to GDR. Plaintiff has also not produced any documentation detailing the contents of the Chase Bank portfolio received by GDR, including specific information about individual accounts within the portfolio.

Plaintiff has attempted to rely upon its Exhibit 1, which is the "Chain of Title" for Ms. Dicks' account, as proof of the transfer of the account from Chase Bank through to DAC. However, Plaintiff's Exhibit 1 states that Chase Manhattan is the original issuer of the account, not Chase Bank.[8] Plaintiff identifies its Exhibit 4 as giving rise to this assertion. However, Exhibit 4 shows that Chase Bank, not Chase Manhattan, transferred accounts to Vion Holdings LLC (hereinafter "Vion Holdings"). The failure to identify which of the Chase companies was the original holder of Ms. Dicks' account creates confusion about the actual owner of the account, and put in question the entire chain of title proffered by the Plaintiff, and relied upon in its arguments.

A similar situation was considered in *Klinedinst v. CACH, LLC*.[9] In *Klinedinst*, Judge Graves noted that an affidavit in which the affiant mentions multiple banks,[10] and then fails to "clearly establish what entity transferred the account to [the Plaintiff]," ultimately results

---

[8] Pl. Mot. Summ. J., Ex. E, at 1.
[9] Judge Graves noted that CACH'S failure to properly identify the original owner of the account affects its ability to properly establish which entity transferred the account at issue to CACH. Klinedinst v. CACH, LLC, Del. Super., C.A.No. S13A-07-004, Graves, J.
[10] "The affidavit mentions Bank of America; Bank of America, NA; MBNA Bank NA; Fleet Bank, NA; Bank of America Card Services; and FIA Card Services."

in "confusion about what entity actually owned the account and/or whether several entities owned the account over the years."[11] Judge Graves continued to analyze this chain of title problem, and noted that CACH identified the assignor as MBNA Bank, N.A., but the Court determined that the assignor was actually FIA Card Services, NA. The Court noted that the documents produced failed to correctly establish the chain of title, leaving CACH with a "problematical" position.[12] In this matter, while all of the banks involved are not expressly written out in a single affidavit, the name of the account originator in DAC's chain of title chart and the name of the account originator in DAC's Transfer of Ownership Reports do not match. Identifying banks with different names causes confusion regarding the name of the actual account originator, because there cannot be two. A genuine issue therefore exists as to the actual account owner.

Gilmore's second affidavit, dated October 15, 2010, explains the registration, verification, and transfer of ownership processes within GDR, and discusses the security measures in place for GDR's databases. Gilmore affirmed that each account registered with GDR is given an identifying number and placed in a "portfolio," which also has an identifying number different from the original account numbers. When accounts and portfolios are bought and sold using GDR's system, each participant will electronically sign the transfer documents, which are then recorded by GDR, along with any other business records associated with the particular accounts.[13] DAC attached as exhibits the "Transfer of

---

11 Klinedinst v. CACH, LLC, Del. Super., C.A.No. S13A-07-004, at *2.
12 Id. at *8.
13 Pl. Mot. Summ. J., Ex. 11. The affidavit states: "The information provided by the Issuer to GDR include, but are not limited to, the identity of the original Issuer, account number, debtor name(s), debtor social security number(s), date of account origination, date of first delinquency, charge off date, last payment date and amount, and balance(s) at charge off."

Ownership Reports," each of which have been electronically generated and electronically signed by representatives of Chase Bank, Vion Holdings, Portfolio Investment, and DAC, respectively.[14]

While Gilmore's affidavits are quite detailed as to the process of purchasing and selling charged-off accounts, they lack the necessary specificity to overcome any doubts that Ms. Dicks' account in particular was properly transferred to each of the parties in the ownership chain above. Gilmore's affidavits may detail the transfer of particular portfolios of account receivables, but they fail to detail which individual accounts were contained within the portfolios.

The "Transfer of Ownership Reports" generated for each sale of accounts using GDR's system identifies the number of accounts contained in a particular portfolio, but does not detail which accounts were included in the portfolios. With respect to the Chase Bank to Vion Holdings transfer, 32,158 accounts were sold. In the Vion Holdings to Portfolio Investment transfer, 334 accounts were sold. Finally, in the Portfolio Investment to DAC transfer, only 96 accounts were sold. DAC has provided no documents, i.e., a verified spreadsheet, that would confirm that Ms. Dicks' account was actually one of the 96 accounts transferred to DAC.[15] However, it seeks to have the Court accept only on the "Account

14 Pl. Mot. Summ. J., Ex. E, at 4-6. Mr. Gilmore affirms in his affidavit that "[t]he identity of each participant in the debt sale is authenticated by GDR and has attested to its authority to sign legal documents on behalf of the Issuer, Debt Buyer, or Debt Owner." The affidavit does not state whether the individuals signing the Transfer of Ownership Reports has personal knowledge of the books and record keeping procedures of the companies they represent.

15 In Delaware Acceptance Corp. v. Swain, 2012 WL 6042644, at *1 (Del.Super. Nov. 30, 2012), the Court noted that at trial, "Scanlon acknowledged…that the Assignment and Bill of Sale did not specifically identify which accounts were transferred in that sale." The Court did note, however, that "Scanlon testified that, following DAC's acquisition of the accounts, GACC transmitted a multi-page spreadsheet listing the accounts transferred, along with identifying information, such as the account holder's name, address, and social security number." In the instant matter, Plaintiff attached what appears to be an entry in a spreadsheet,

7

History Report" for Ms. Dicks' account as generated by GDR.[16] The Court, therefore, has no means to verify that Ms. Dicks' account was actually included in all of the aforementioned portfolio transfers, even if DAC could somehow prove that Chase Bank was the proper owner of the account, rather than Chase Manhattan.[17]

While it appears that DAC seeks to rely upon Gilmore's affidavit describing the Account History Report for Ms. Dicks' particular account,[18] it cannot show that the records from Chase Bank were "made by or from information transmitted by a person with knowledge."[19] Thus, the Court is not satisfied that the records and documents provided by DAC is sufficient to show that Ms. Dicks' account was transferred to the particular parties, thus this is a factual matter for trial.

DAC also relies upon the September 9, 2013 affidavit of Mr. Scanlon to prove its ownership. Scanlon's affidavit provides as follows:

---

which includes Ms. Dicks' name, account number 5749, Ms. Dicks' address, and other identifying information. The entry lists Chase Manhattan as the Original Client, and lists Portfolio Investments as the Seller. However, there are no identifying features on this document that identifies the owner of the information, nor does it provide a certification that the information contained in the document is accurate. Additionally, DAC has not provided any affidavits that verify the accuracy of the information contained in the entry.

16 Pl. Mot. Summ. J., Ex. E., at 2. Mr. Gilmore's affidavit states that "[t]he Account History Report includes a Chain of Ownership Summary beginning with the Initial Registration and details each successive Transfer of Ownership." The affidavit further states that the documents associated with the accounts, as provided by the Issuer and/or the Debt Owner are transferred as well. He does not confirm whether GDR seeks affidavits as to the validity of such documents, or whether it merely uploads what is provided, assuming it to be valid.

17 Pl. Mot. Summ. J., Ex. E, at 4-6.

18 The "Account History Report" identifies account number 5749 as Ms. Dicks', identifies that it was originally issued by Chase Bank USA, N.A., and states that the charge-off balance on the account is $8,002.49. The Report also contains a "Chain of Ownership Summary," detailing the numerous transfers alleged by Plaintiff in the Motion.

19 Klinedinst v. CACH, LLC, Del. Super., C.A.No. S13A-07-004, at *8; see also Commonwealth Financial Systems v. Smith, 2010 WL 3491225 at *12 (Pa.Com.Pl. Jan. 26, 2010) (requiring an authenticating witness to "provide sufficient information relative to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company").

8

1. That I am a representative of the Plaintiff, Delaware Acceptance Corp, in the above-captioned action and am authorized to make this Affidavit.
2. That Delaware Acceptance Corp is the rightful owner of this account.
3. That one of my responsibilities is to serve as keeper of the books and records of Delaware Acceptance Corp, which are kept in the ordinary course of business, with the entries in them having been made at or near the time of the occurrence.
4. That I have reviewed the books and records of Delaware Acceptance Corp with respect to the indebtedness of Sherri R. Dicks, Defendant, and the books and records reflect that as of September 9, 2013 there was a principal amount due of $8,002.49 plus pre-judgment interest at the rate of 9.75% per annum, plus post-judgment interest at the rate of 5.75% per annum from the date of judgment, plus costs.
5. That the facts contained in this Affidavit are true and correct to the best of my knowledge and belief.[20]

Scanlon states that "DAC is the rightful owner of this account," but does not demonstrate that he has knowledge of the transfer of the account from the alleged assignees, starting from Chase Bank or Chase Manhattan. As the Superior Court pointed out with respect to an affidavit in *Klinedinst*, "She [affiant] cannot testify regarding how the various parties in the chain of title… maintained their records; i.e., she cannot testify that the records were made by or from information transmitted by a person with knowledge."[21] Scanlon's affidavit, similarly, cannot prove that DAC is the rightful owner of the account simply because the "books and records" of DAC contain information regarding Ms. Dicks' account.

Finally, DAC argues that it can prove ownership of the account because "[t]he circumstances surrounding the sale create no suggestion of irregularity." DAC alleges that because it "has possession of the monthly billing statements from the original creditor, Chase Bank, to the Defendant," and the possession of such information "is prohibited to anyone who is not the owner of the account, it must be the true owner." DAC also argues

---

20 Pl. Mot. Summ. J., Ex. F.
21 Klinedinst v. CACH, LLC, Del. Super., C.A.No. S13A-07-004, at *8.

9

that because no other creditor has come forward to claim ownership over the account, and the statute of limitations has expired, "Defendant suffers no risk of double jeopardy."[22]

This matter is not the first time a party has attempted to use such argument. In both *Delaware Acceptance Corp. v. Swain*[23] and *Klinedinst v. CACH, LLC*, DAC and CACH attempted to rely upon this argument as a basis to prove ownership, and in both cases the Court deemed the argument without merit.[24] Based upon the conclusions reached in these decisions, I find no basis to give weight to this argument.

The Court is not satisfied, after a review of the documents and arguments submitted by each party, that DAC has proven by a preponderance of the evidence that it is the owner of Ms. Dicks' account and thus the proper party to bring this suit. DAC has not produced a clear Chain of Title, and therefore a genuine issue of material fact exists with respect to the true owner of Ms. Dicks' account.

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED this 18h day of February, 2014** that DAC's Motion for Summary Judgment is DENIED. The Clerk will schedule the matter for trial.

---

22 Pl. Open. Br. in Support of It's [sic] Mot. Summ. J., at 5.
23 2012 WL 830563 at *7.
24 Del. Super., C.A.No. S13A-07-004, at *9,

**IT IS SO ORDERED.**

_____

The Honorable Alex J. Smalls
Chief Judge

Dicks-ORD Feb 2014